Stephen KOSANOWSKY, Plaintiff,

v.

UNITED STATES DEPARTMENT OF the ARMY, Defendant.

No. 85 Civ. 3982 (CLB).

United States District Court, S.D. New York.

May 8, 1987.

Stephen Kosanowsky, pro se.

Robert Gaffey, Asst. U.S. Atty. (S.D.N.Y.), White Plains, N.Y., for defendant.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge:

Defendant United States Department of the Army moves to dismiss plaintiff Stephen Kosanowsky's pro se Complaint, which ultimately relates to Kosanowsky's discharge by defendant from the position of Supervisory Civil Engineer at Goeppingen Military Community in the Federal Republic of Germany, effective September 11, 1982. Because we find that we lack subject matter jurisdiction over Kosanowsky's appeal from the Merit Systems Protection Board (MSPB), but that the Court of Appeals for the Federal Circuit does have subject matter jurisdiction, the motion is denied and the case transferred to that Court under 28 U.S.C. § 1631 (1982).

The administrative record reveals the following facts. On April 5, 1982, Kosanowsky failed to return to Goeppingen upon the expiration of a period of approved leave. On April 8, Major Denton R. Brown, Director of Engineering and Housing at Goeppingen, wrote Kosanowsky at his post office box at Pond Eddy, New York, in this district, informing him that he was absent without leave and that he would be deemed to have abandoned his position if he did not return by April 23. On May 28, Major Brown sent Kosanowsky a Notice of Proposed Removal setting forth two reasons for Kosanowsky's termination. First, Kosanowsky had remained AWOL, and had expressed interest in converting his Federal Employee Health Benefits plan to a private health plan, actions that led Major Brown to conclude that Kosanowsky intended to relinquish his position. Second, Kosanowsky had moved from a private apartment to the Goeppingen bachelor officers barracks, thereby disqualifying himself for a Living Quarters Allowance (LQA), without reporting the change.

On August 27, 1982, Lieutenant Colonel John R. Wakelin rendered a final decision implementing Major Brown's recommendation to terminate Kosanowsky, finding that Kosanowsky's absence and his failure to report his loss of LQA entitlement were unauthorized.

Kosanowsky exercised his right to appeal to the MSPB on September 14, 1982. He alleged that the decision to terminate him was unjustified because he was medically unfit for duty, and admitted his failure to report his change of quarters but maintained that he had "not been overpaid."

The MSPB affirmed Kosanowsky's dismissal in an initial opinion dated August 1, 1983. Several letters from physicians in support of Kosanowsky's claim of mental incapacity were before the MSPB. Interpreting those that were allegedly presented to the Army as supporting an implied request for sick leave, the MSPB Presiding Officer discounted them, among other reasons because they contained neither a definite diagnosis nor a prognosis. Moreover, the Presiding Officer found that the three medical statements submitted directly to the MSPB did not render the Army's decision to carry Kosanowsky as AWOL improper, for two reasons. First, Kosanow-

sky had not submitted these letters to the Army although he had the opportunity; second, none of the physicians claimed to have been treating Kosanowsky during his absence, so that their statements did not relate directly to his condition at that time.

The Presiding Officer found that the Army had demonstrated that Kosanowsky had forfeited his LQA by moving into the bachelor officers' barracks. She observed that in view of the fact that Kosanowsky's Foreign Allowance Application contained a provision, above the signature line, obligating him to report any changes in situation that might affect his allowance, Kosanowsky's explanation that he did not report the change because he did not think it would affect his allowance was "incredible." In consequence, she sustained the Army's charge.

Finally, the Presiding Officer considered sua sponte whether the Army had a responsibility to accommodate Kosanowsky due to a known mental or physical handicap, finding that Kosanowsky's medical evidence did not sustain his burden of establishing that he suffered from a handicapping condition. She rejected Kosanowsky's defenses that the AWOL charge was pretextual and that there was no nexus between his absence and the efficiency of the service; and she found that removal was a reasonable penalty.

Kosanowsky appealed to the full MSPB, which denied his petition for review on February 17, 1984. He next appealed to the Equal Employment Opportunity Commission (EEOC), which, on March 1, 1985, upheld the MSPB's finding that Kosanowsky had failed to establish that he was handicapped and had therefore failed to prove discrimination.

Kosanowsky then initiated an action in this Court for review of the MSPB decision.

■ This Court lacks subject matter jurisdiction over this Complaint. The powers of the MSPB to review employment decisions of federal agencies are set out at 5 U.S.C. § 7701 (1982). Title 5 U.S.C. § 7702 sets out a special category of MSPB decisions, those involving an allegation of discrimination under four enumerated stat-

utes, one of which is the Rehabilitation Act of 1973, 29 U.S.C. § 791. *See* 5 U.S.C. 7702(a)(1)(B)(iii) (1982). Judicial review of a § 7702 decision is vested in the district courts by 5 U.S.C. § 7703(b)(2) (1982), which provides that the appeal shall be deemed to arise under one of three statutes that grant original jurisdiction to the district courts. In a § 7702 case, the employee may, under § 7702(b)(1), petition the EEOC to consider the MSPB's decision; § 7702(b)(5)(A) provides that if the EEOC concurs in the MSPB's decision, that decision is judicially reviewable. In all other cases, under 5 U.S.C. § 7703(b)(1) (1982) judicial review of MSPB decisions is vested exclusively in the Court of Appeals for the Federal Circuit, although that Court will not take jurisdiction over any part of a "mixed" case, one that combines discrimination and nondiscrimination claims. *Williams v. Department of the Army,* 715 F.2d 1485 (Fed.Cir.1983) (en banc).

Our examination of the administrative record convinces us that Kosanowsky has not successfully alleged that he was discriminated against on the basis of a handicap, and that his case ought not to have proceeded, as it did, through the channels of MSPB and EEOC review prescribed by § 7702. The problem is that nowhere in his voluminous submissions does Kosanowsky actually assert that the Army discriminated against him on the basis of a handicap, as is required to confer jurisdiction on this Court. Indeed, he appears to have declined the opportunity to make any such assertion. Section 13(a) of the MSPB Appeals Form offers the appellant the opportunity to explain "how you were discriminated against by the agency because of either your race, color, religion, sex, national origin, marital status, political affiliation, handicapping condition, or age," instructing that "[y]ou must indicate, by examples, how you were discriminated against." Kosanowsky left this section blank. Indeed, in answer to Section 12 of the MSPB Appeals Form, which inquires whether the appellant has filed any grievance or other complaint with any agency, Kosanowsky wrote: "I believe the action is an error due

to improper communication and poor mail service," an account of the matter flatly inconsistent with a charge of discrimination of any kind.

Kosanowsky has, in fact, presented a consistent position throughout these proceedings that is incompatible with a charge of discrimination. As early as March 21, 1982, in one of the opening shots of this controversy, Kosanowsky wrote one of his Goeppingen superiors from Pond Eddy, New York, to say, in substance, that he was undergoing medical treatment and that a note from his physician would be forthcoming. The message is patently that Kosanowsky is ill and that his illness is a prospective excuse for his absence. Kosanowsky is simply not, in this letter, indicating that he has a handicap and asking that it be reasonably accommodated. He is offering an explanation for his expected inability to return to his post, one which he hopes will prevent the Army from carrying him as AWOL. Subsequently, Kosanowsky's position throughout has been that the Army disserved him by not taking that explanation seriously. For example, in the pro se Complaint form with which Kosanowsky initiated this action in this Court, Kosanowsky specified the "alleged discriminatory acts" as follows:

No claim of discrimination as to gender, color, race, religion, or national origin is being made. Plaintiff feels that because Defendant's action for removal from U.S. Civil Service was being taken while he was under psychiatric care, he, Defendant, his agents and Government boards which reviewed the case did not apply criteria which would recognize the health problem.

Thus, Kosanowsky's litigation position is now and always has been that the Army wronged him by declaring him AWOL without taking his medical excuse for absence into proper account, and then compounded that wrong by removing him from his position. The claim is not that the Army failed to make reasonable accomodation for a known handicap, but that Kosanowsky should not have been removed, because he should not have been declared AWOL, because he had a reason to be absent. This is simply not sufficient to state a claim under the Rehabilitation Act.

Scrutiny of the administrative record shows that the notion that Kosanowsky has stated a claim of handicap discrimination can be traced back to a single passage in his original appeal documents to the MSPB—the only passage that will even colorably bear such an interpretation. Kosanowsky was represented by counsel on that appeal. Counsel submitted a memorandum in support of his petition in which she argued, among other things, that the Army's decision to remove him was "procedurally defective because the agency made no effort to accommodate appellant's inability to return to work due to a medical condition." Kosanowsky's counsel went on to claim:

In *Doe v. Hampton* [566 F.2d 265 (D.C. Cir.1977)], the Court recognized the existence of a government policy requiring all employing agencies to exercise an informed discretion in determining whether reassignment or leave without pay are reasonable alternatives to removal of an employee suffering a mental or physical condition rendering him unable to perform the duties of his position. In the event that an agency fails to make every reasonable effort to accommodate its employee, the personnel action for removal is void as procedurally defective.

In fact, the Court of Appeals for the District of Columbia Circuit in *Doe v. Hampton* did no such thing. Counsel here cited to a provision in the Federal Personnel Manual that was indeed at issue in *Doe*, but rather than recognizing a "government policy" such as counsel describes, the Court of Appeals *remanded* to the district court precisely for a determination whether the relevant language was mandatory or precatory. As the Court of Appeals observed, if the provision were merely precatory, the plaintiff would have no cause of action for wrongful removal. 566 F.2d at 280 ("We must ... address the question whether the above-quoted provision in the *Manual* is a regulation or something less which does not give employees enforceable substantive rights.").

It is true that there *is* a "government policy," codified at 29 C.F.R. § 1613.704(a) (1984) that "[a]n agency shall make reasonable accommodation to the known physical or mental limitations of a qualified handicapped applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operations of its program." Furthermore, "working" is one of the "major life activities" whose substantial limitation by a physical or mental impairment can make a person "handicapped" under 29 C.F.R. § 1613.702(a)(1) (1984). We have no doubt that an allegation that an agency violated § 1613 would state a claim for handicap discrimination, and that we would have jurisdiction over such a claim once it reached us via MSPB or EEOC review. Kosanowsky's counsel did *not*, however, allege that the Army violated § 1613. She argued instead that Kosanowsky's removal was *procedurally defective*, not illegal, because the Army had failed to consider alternatives to removal, such as reassignment or leave without pay. This is consistent with the general position we have gleaned from Kosanowsky's papers: the Army should not have carried Kosanowsky as AWOL because he offered a medical excuse for his absence, and it should not have removed him because his excuse was consistent with alternative resolutions. The Army's position, as evinced by its responses to counsel's interrogatories, is that there simply were no alternative resolutions: Kosanowsky was removed because he was AWOL and had failed to present a justification for his absence.

Thus, Kosanowsky's counsel offered an argument that bears a superficial resemblance to a claim of handicap discrimination, but that does not rise to the level of a claim that the Army violated the Rehabilitation Act or its implementing regulations.

In *Steelman v. Department of the Air Force*, 12 MSPB 122, 13 M.S.P.R. 564 (1982), the Board indeed held that failure to accommodate a disability is handicap discrimination, a prohibited personnel practice under 5 U.S.C. § 2302(b)(1)(D) (1982). *Steelman*, however, was indisputably a § 1613 case. Here, nothing supports the view that Kosanowsky has alleged handicap discrimination except the Presiding Officer's sua sponte determination that he has. The Presiding Officer, however, is barred from making such a determination. 5 C.F.R. § 1201.56(b)(2) states that it is an affirmative defense of the appellant in an MSPB proceeding to "[d]emonstrate[ ] that the [agency] decision was based on any prohibited personnel practice described in 5 U.S.C. § 2302(b)." It is elementary that an affirmative defense must be pleaded and proved by the party who has the burden of presenting it. This elementary principle holds in MSPB proceedings. In *McKowen v. MSPB*, 703 F.2d 14 (1st Cir.1983), the First Circuit affirmed the full MSPB, which had reversed the Presiding Officer's sua sponte consideration of the handicap discrimination issue: "an allegation of discrimination based on a handicapping condition 'is an affirmative defense that must be pleaded and proved by the appellant who asserts it.'" 703 F.2d at 16 (quoting full MSPB opinion, without citation). The First Circuit noted that McKowen had introduced evidence of his emotional problems, but that "this evidence was presented to support the argument that the penalty was too severe, not to show that [McKowen] had suffered discrimination as required by the regulations. *The mere fact that McKowen presented evidence of his condition does not mean that the defense was raised."* *Id.* at 16–17 (emphasis added). Here too, Kosanowsky's evidence of his emotional state apparently was introduced to show that the penalty for his actions was inappropriate, not that he was a victim of handicap discrimination.

In light of *McKowen* and the administrative record, then, we conclude that Kosanowsky did not raise a claim of handicap discrimination and that the Presiding Officer had no power to raise it for him. Once the Presiding Officer did so, however, the alleged claim became entrenched in the record.

An MSPB initial decision contains a boilerplate notice, which informs the appellant, among other things, that he has the right to petition the EEOC for review of

the MSPB's final decision on an issue of discrimination. When the full MSPB denied Kosanowsky's petition for review, its order contained a similar notice to the appellant of his right to review before the EEOC or an appropriate district court.

It is hardly surprising that Kosanowsky proceeded to seek EEOC review. More surprising was the EEOC's disposition of Kosanowsky's petition for review. As this opinion has shown, the EEOC should have declined Kosanowsky's appeal for want of jurisdiction. Instead, it asserted jurisdiction over the appeal, limited to "the MSPB's finding that petitioner failed to show the presence of a handicapping condition which the respondent had a duty to accommodate, and the consequent conclusion that petitioner had proven no discrimination violative of the Rehabilitation Act...." The EEOC noted that Kosanowsky's petition to the MSPB contained no claim of discrimination. It went on to note his contention that his removal was procedurally defective because the Army failed to consider alternatives to removal.

■ Instead of dismissing the petition for failure to state a reviewable claim, however, the EEOC noted: "*Presuming* the contention is intended as a claim that petitioner was a victim of unlawful handicap discrimination, petitioner bears the initial burden of establishing the existence of a known handicapping condition as prescribed in the Regulations ..." (emphasis added). The EEOC then went on to consider Kosanowsky's "contention" under § 1613, and concurred in the MSPB's decision that there was no handicap discrimination. Like the MSPB, the EEOC should not have reached this issue, because it can only have done so by raising a claim of handicap discrimination, an affirmative defense, sua sponte. The EEOC indeed admits in the quoted passage that this is exactly what it has done: to entertain Kosanowsky's petition at all it has to "presume" that he has stated a cognizable claim. But this is insupportable. Our solicitude for pro se litigants does not go so far as to confer jurisdiction on their claims without a basis for

jurisdiction. No such basis appears in the administrative record.

The EEOC's disposition of Kosanowsky's petition had an even more unfortunate result. EEOC decisions reviewing MSPB proceedings also contain a boilerplate notice, that "the petitioner ... has a right to file a civil action and seek a trial *de novo* in the appropriate United States District Court...."

In evident uncertainty as to how to proceed, Kosanowsky wrote on March 20, 1985, to the Court of Appeals for the Federal Circuit: "I was unsuccessful in my attempt to get reinstated to my former civil service job (see attached EEOC decision). I don't feel the findings revealed the true condition of my inability to work. Therefore I would like to bring my case before a judge." On April 2, the Clerk of the Court responded:

As the decision attached to your letter stated, you do have the right to appeal under 5 U.S.C. 7002, but it must be to a United States District Court and not to this Court whose jurisdiction is limited solely to decisions of the Merit Systems Protection Board under 28 U.S.C. 1295.

It is evident from this exchange that the Clerk of the Court reviewed the EEOC decision, noted correctly that, as the boilerplate says, the right to de novo determination of such a decision lies in the district courts, and so apprised Kosanowsky. There is nothing whatever to indicate that the Clerk of the Court had before him any portion of the record other than the EEOC decision and Kosanowsky's letter to him. Neither was it the Clerk of the Court's function to review the EEOC decision and determine whether the EEOC had properly asserted jurisdiction over Kosanowsky's claim, or advise the litigant. To have done so, indeed, would likely have violated Fed. Cir.R. 4, which commands that "[n]o employee of the court shall engage in the practice of law."

■ The Clerk of the Court is an amanuensis. There can be no doubt that he acted correctly and responsibly in telling Kosanowsky what he did. For it is the function of an amanuensis to copy mis-

takes, not to correct them. As this opinion has demonstrated, that is what happened in this case. It was the Court of Appeals for the Federal Circuit, not this Court, that had subject matter jurisdiction of Kosanowsky's appeal from the MSPB all along, although the Clerk of that Court properly discharged his duties in telling Kosanowsky otherwise.

This Court expressed doubts as to its jurisdiction in this case as early as the second pretrial hearing, on April 11, 1986:

> [Y]ou put in your petition here that no claim of discrimination was made as to gender, color, race or national origin.... If that be the fact, that is really not an EEOC matter.

> And on Page 4 [of Kosanowsky's petition], you say: "Plaintiff"—which is yourself—"respectfully petitions the Court to correct the injury by reinstating the plaintiff to his former U.S. civil service job as an GS 11 civil engineer, with all rights, privileges and pay."

> Now, that is solely a matter, as I understand it, for the Merit Systems Protection Board.

> So the only thing that you could review here, as I understand it, would be that board's decision.

We now conclude that those doubts were justified.

Our lack of jurisdiction does not, however, deprive Kosanowsky of a forum. The Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, which established the Court of Appeals for the Federal Circuit, also contained a provision for transfer of cases to cure a want of jurisdiction, codified at 28 U.S.C. § 1631 (1982):

> Whenever a civil action is filed in a court ... or an appeal, including a petition for review of administrative action, is noticed for or filed with ... a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

■ It is in the interest of justice that Kosanowsky's Complaint be heard. The EEOC issued its decision on March 1, 1985. Kosanowsky received the decision on March 18, 1985, as demonstrated by registered mail receipt. Kosanowsky had thirty days from receipt—until April 17, 1985—to appeal. On March 20, he wrote to the Court of Appeals for the Federal Circuit, and the Clerk of the Court responded on April 2. Thus, the Court of Appeals for the Federal Circuit had received Kosanowsky's letter within the time allotted him to appeal.

I conclude that the letter satisfied the notice of appeal requirements of Fed.R. App.P. 3(c) (specifying content of notice of appeal) and 15(a) (governing petitions for review of agency orders generally). In *Interstate Natural Gas Association v. Federal Energy Regulatory Commission,* 756 F.2d 166, 170 (D.C.Cir.1985), *cert. denied sub nom. Pennzoil Co. v. Associated Gas Distributors,* — U.S. —, 106 S.Ct. 139, 88 L.Ed.2d 115 (1986), the District of Columbia Circuit summarized the consistent and longstanding practice of all our Courts of Appeals regarding the formalities of a notice of appeal:

> Federal appellate courts have broadly recognized that the filing of a paper substantially equivalent to one that formally inaugurates the normal review process may well suffice for that purpose. Thus the need for a notice of appeal may be satisfied by any of a variable host of filings evincing unequivocally an intention to appeal.... The reason is that the content requirements of a notice of appeal ... may easily be met by a document of similar import, and the interests of justice may demand its acceptance as an effective substitute.

*See also, e.g., Cobb v. Lewis,* 488 F.2d 41, 45 (5th Cir.1974) ("[T]he notice of appeal requirement may be satisfied by any statement, made either to the district court or to the Court of Appeals, that clearly evinces

the party's intent to appeal.") Rule 3(c) requires only that the notice of appeal specify the party taking the appeal, the judgment or order appealed from, and the court to which the appeal is being taken. Kosanowsky's letter, with the appended EEOC decision, clearly satisfied these requirements. There was, therefore, a document timely filed with the Court of Appeals for the Federal Circuit sufficient to initiate the appellate process in that Court. Thus a transfer to that Court, if otherwise permitted under § 1631, would serve the interests of justice.

■ Section 1631 imposes one further jurisdictional requirement. Kosanowsky's filing in *this* Court must have met the time requirements for filing an appeal in the Court of Appeals for the Federal Circuit. *See Billops v. Department of the Air Force*, 725 F.2d 1160, 1163 (8th Cir.1984). At the second pretrial hearing, this Court expressed doubt about the timeliness of Kosanowsky's filing, noting that the certified mail receipt on the EEOC opinion was dated March 18, that Kosanowsky's pro se Complaint form was stamped "Received" by the Southern District Pro Se Office on April 24, and that his covering letter for the Complaint was dated April 20. This Court now points out that Kosanowsky first communicated with the Clerk of this Court on April 10, attaching copies of his correspondence with the Clerk of the Court of Appeals for the Federal Circuit and requesting appointment of an attorney *in forma pauperis*. Having recently found that his letter to the Clerk of the Court of Appeals for the Federal Circuit satisfies the requirements of a notice of appeal, we find *a fortiori* that Kosanowsky's mailing a copy of that letter to the Clerk of the Court for the Southern District of New York satisfies the requirements of a filing in this Court. We note that the writing of a letter requesting representation *in forma pauperis* has been held independently a sufficient proxy for a notice of appeal. *See, e.g., Belton v. United States*, 259 F.2d 811, 814 (D.C.Cir.1958) (en banc), *cited in Interstate Natural Gas Association*, 756 F.2d at 170.

Thus, having no subject matter jurisdiction over this Complaint but finding that Court of Appeals for the Federal Circuit does have such jurisdiction, and finding the requirements of 28 U.S.C. § 1631 otherwise satisfied, we order that the case be transferred to the Court of Appeals for the Federal Circuit.

So Ordered.